James E. Cecchi
Caroline F. Bartlett
**CARELLA, BYRNE, CECCHI, OLSTEIN, BRODY & AGNELLO, P.C.**
5 Becker Farm Road
Roseland, NJ 07068
Telephone: (973) 994-1700
Facsimile: (973) 994-1744
*Attorneys for Plaintiff SIPCO, LLC*

Gregory J. Myers, MN #0287398
Kristen G. Marttila, MN #0346007
**LOCKRIDGE GRINDAL NAUEN P.L.L.P.**
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
Telephone: (612) 339-6900
Facsimile: (612) 339-0981

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| SIPCO, LLC,<br><br>Plaintiff,<br><br>v.<br><br>RAB Lighting Inc.<br><br>Defendant. | Case No.<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiffs, SIPCO, LLC ("SIPCO"), by and through undersigned counsel, hereby brings suit against RAB LIGHTING INC. ("RAB") and alleges as follows:

## NATURE OF THE ACTION

1. This is a civil action for patent infringement of United States Patents Nos. 7,103,511 ('511 Patent), 7,468,661 ('661 Patent), 6,914,893 ('893 Patent), 7,263,073 ('073 Patent), 6,836,737 ('737 Patent), and 8,924,587 ('587 Patent) under the patent laws of the United States, including 35 U.S.C. §§271 and 281-285.

2. A copy of the '511 Patent together with its Ex Parte Reexamination Certificate is attached as Exhibit A; a copy of the '661 Patent is attached as Exhibit B; a copy of the '893 Patent is attached as Exhibit C; a copy of the '073 Patent is attached as Exhibit D; a copy of the '737 Patent is attached as Exhibit E; a copy of the '587 Patent is attached as Exhibit F.

526432.1

## PARTIES

3. Plaintiff SIPCO, LLC is a limited liability company organized and existing under the laws of the State of Georgia and maintains its principal place of business at 20638 Duxbury Terrace, Ashburn, Virginia 20147.

4. Defendant RAB is a corporation organized and existing under the laws of the State of New Jersey, with its principal place of business at 170 Ludlow Avenue, Northvale, New Jersey, 07647.

## JURISDICTION AND VENUE

5. Pursuant to 28 U.S.C. §§ 1331 and 1338(a), this Court has original jurisdiction over the subject matter of this action because this is an action arising under the Patent Laws of the United States, 35 U.S.C. § 1 *et. seq.*

6. This court has personal jurisdiction over Defendant because infringing activity alleged herein took place in the State of New Jersey. Further, the exercise of personal jurisdiction comports with Due Process under the United States Constitution.

7. Pursuant to 28 U.S.C. §§ 1391 and 1400(b), venue is proper in this district.

## GENERAL ALLEGATIONS

### SIPCO, LLC

8. SIPCO is a small research, development and technology company originally based in Atlanta, Georgia. T. David Petite was its founding member.

9. In the 1990s, through his own individual research and development efforts, Mr. Petite invented a large number of wireless control and distribution technology applications. The inventions resulting from Mr. Petite's efforts include, but are not limited to, various ways of moving data as economically and seamlessly as possible over both wired and wireless networks.

10. Through the 1990s and early 2000s investors contributed tens of millions of dollars for technology development and implementation of networks. Clients included Georgia Power, Alabama Power, Newnan Utilities GA, Johnson Controls, Synovus Bank, and Grand Court Lifestyles residential living facilities.

11. After proving that the technology worked in the field, several companies competed to purchase an exclusive license to Mr. Petite's technology for the market known as "smart grid." Landis+Gyr (http://www.landisgyr.com/) (previously Siemens Metering) took an exclusive license to the smart grid technology in 2002 and in 2005 purchased rights to the technology for utility applications for $30,000,000. Mr. Petite's technology has been deployed in millions of meters deployed across North America and throughout the world.

12. SIPCO retained the rights to the mesh network patents, and for use of the technology outside of the utility space. It still maintains ownership of the software, firmware, hardware and patent portfolio that resulted from Mr. Petite's research and development efforts.

13. SIPCO's patent portfolios (of which the patents in suit are a part) include inventions that are widely recognized as pioneering in various fields of use. As a result, more than 100 corporations have taken licenses to them. Licensees include companies operating in the vertical markets of Industrial Controls, Lighting, Smart Grid, Building Automation, Network Backhaul, Home Appliance, Home Automation and Entertainment, Sensor Monitoring, and Internet Service Provisioning. Licensed products include products using standard wireless mesh protocols such as WirelessHART, Zigbee, IEEE 802.15.4, Thread, 6LoWPAN, Z-Wave, as well as proprietary wireless protocols such as that marketed by Enocean.

14. SIPCO is the exclusive owner of all rights, title, and interest in the patents in suit, including the right to exclude others and to enforce, sue and recover damages for past and future infringement thereof.

## DEFENDANT RAB LIGHTING INC.

15. RAB is a lighting products company based in Northvale, New Jersey, that sells products nationwide, including networked lighting control systems.

16. RAB has annual net sales in excess of $50 million. It is a market leader and one of the nation's leading providers of indoor and outdoor lighting and energy management solutions.

17. RAB has made, used, offered for sale, and sold wireless lighting control systems and components, including a line of systems, products and methods that are within or part of the Lightcloud line or lines (hereinafter "Lightcloud").

18. RAB advertises wireless lighting control systems and components that "use Lightcloud enabled fixtures" for a "simple and affordable way to benefit from wireless lighting controls" and products that feature fixtures with "Lightcloud pre-installed" that are "plug-and-play" with no special installation or wiring required.

19. For example, RAB advertises – and, therefore, has made, used, offered for sale, and sold – Lightcloud products it calls the:

- "Lightcloud Touch," a wall-mounted touchscreen for switching, dimming and scene control via a local mesh network;

- Lightcloud Dimmer, an in-wall device that delivers remote switching, dimming and scene control;

- "Lightcloud Daylight" solar-powered wireless sensors that can dim or shut off electric lighting when sunlight is sufficient;

- Lightcloud Sensor, which detects and switches or dims both local and remote circuits based on motion;

- "Lightcloud Gateway," the brain of a Lightcloud system that communicates with RAB's servers by a private cellular connection; and

- "Lightcloud Controller," a basic building block of a Lightcloud system to control the system, including switching and dimming, power management or extending the range of a Lightcloud mesh network.

A Lightcloud installation "requires at least one Lightcloud Gateway" to manage the wireless devices.

20. The specifications for Lightcloud require that it includes products that use or are based on devices that contain integrated radios operating to IEEE 802.15.4 standards for wireless mesh protocols. Such Lightcloud systems consist of devices that have the capability of communicating with each other via a distributed mesh network. Lightcloud communicates as a closed system using a proprietary protocol, compliant with United States National Security Agency's "Recommended Practices Guide for Securing Zigbee Wireless Networks in Process Control System Environments."

21. Upon information and belief, Lightcloud products that consist of devices containing integrated radios operating to IEEE 802.15.4 standards employ a Zigbee device.

22. RAB has installed Lightcloud in several hundred commercial and residential locations and settings, such as airports and aviation centers, community centers, hospitals and healthcare facilities, hotels, industrial sites, offices, restaurants, retail sites, schools and

universities, places of worship, sports and recreation facilities and residential sites. Lightcloud installations are applicable to a variety of lighting and controls, including area lights, garage lights, stairwell lights, bay lights, panel lights, floodlights and other light varieties.

## DEFENDANT'S KNOWLEDGE OF PLAINTIFF'S PATENTS

23. RAB initiated contact with SIPCO on December 14, 2015 to discuss the SIPCO licensing program and has been aware of the patents in suit since at least that time frame. Following discussions with a representative for SIPCO, SIPCO's representative provided sample claim charts relating to the '511 Patent, the '661 Patent, and the '893 Patent detailing the infringement of at least one claim of each of those patents.

24. RAB was subsequently engaged in license discussions with SIPCO over the course of the next two years. RAB's outside counsel reviewed several of the patents in suit with RAB's upper management and in repeated discussions with SIPCO's representative.

25. RAB was also presented with a list of other patents owned by SIPCO or its related company, IPCO, LLC ("IPCO").

26. RAB ultimately delayed discussions and did not finalize a license agreement with SIPCO or IPCO.

## COUNT I: DIRECT AND INDIRECT INFRINGEMENT OF THE '511 PATENT

27. Plaintiff hereby restates the allegations contained in the preceding paragraphs above as if fully set forth herein.

28. Plaintiff is the owner by assignment of the '511 Patent, "Wireless Communications Networks For Providing Remote Monitoring Of Devices." The '511 Patent was duly and legally issued on September 5, 2006, and was reexamined and a Reexamination Certificate was issued on October 25, 2011.

29. Independent claim 1 of the '511 Patent states:

A wireless communication network adapted for use in an automated monitoring system for monitoring and controlling a plurality of remote devices via a host computer connected to a wide area network, the wireless communication network comprising:

a plurality of wireless transceivers having unique identifiers, each of the plurality of wireless transceivers configured to receive a sensor data signal from one of the plurality of remote devices and transmit an original data message using a predefined wireless communication protocol, the original data message comprising the corresponding unique identifier and sensor data signal and further configured to receive the original data message using the predefined communication protocol, the repeated data message including the sensor data signal and the corresponding unique identifier; and

a site controller in communication with at least one of the plurality of wireless transceivers, the site controller configured to receive the original data messages and the repeated data messages, identify the remote device associated with the corresponding sensor data signal, and provide information related to the sensor data signal to the wide area network for delivery to the host computer.

*See* Exhibit A, Col. 23, line 21 – 46.

30. Defendant has been and now is directly infringing at least claim 1 of the '511 Patent by making, having had made, using, offering for sale, and selling Lightcloud networked lighting control system products that include Zigbee devices.

31. A claim chart, attached as Exhibit G, explains how Defendant directly infringed, and is infringing, claim 1 of the '511 Patent.

32. Defendant has been and now is indirectly infringing as a contributory infringer under 35 U.S.C. § 271 at least claim 1 of the '511 Patent by making, having had made, using, offering for sale, and selling Lightcloud networked lighting control system products that include Zigbee devices, wherein Lightcloud is a component of a patented system, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an

infringement of such patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use.

33. Defendant's acts of infringement have caused and continue to cause damage to Plaintiff. Plaintiff is entitled to recover from Defendant the damages sustained by Plaintiff as a result of Defendant's wrongful acts.

## COUNT II: DIRECT AND INDIRECT INFRINGEMENT OF THE '661 PATENT

34. Plaintiff hereby restates the allegations contained in the preceding paragraphs above as if fully set forth herein.

35. Plaintiff is the owner by assignment of the '661 Patent, "Systems And Methods For Monitoring And Controlling Remote Devices." The '661 Patent was duly and legally issued on December 23, 2008.

36. Claim 9 of the '661 Patent states:

A system for controlling a remote device comprising:

a target remote device having an actuator to be controlled;

a computer configured to execute at least one computer program that generates at least one control signal responsive to a system input signal; said computer integrated with a wide area network (WAN);

a gateway connected to the WAN configured to receive and translate the at least one control signal

a wireless transmitter coupled with the gateway for transmitting a wireless signal that contains the control signal;

a first wireless transceiver electrically interfaced with an actuator for receiving the wireless signal and further retransmitting the wireless signal to the target remote device; and

logic coupled to the target remote device for extracting the control signal from the retransmitted wireless signal and imparting an action on the actuator in response to the extracted control signal.

*See* Exhibit B, Col. 19, line 43 – Col. 20, line 4.

37. Defendant has been and now is directly infringing at least claim 9 of the '661 Patent by making, having had made, using, offering for sale, and selling Lightcloud networked lighting control system products that include Zigbee devices.

38. A claim chart attached as Exhibit H, explains how Defendant directly infringed, and is infringing, claim 9 of the '661 Patent.

39. Defendant has been and now is indirectly infringing as contributory infringers under 35 U.S.C. § 271 at least claim 9 of the '661 Patent by making, having had made, using, offering for sale, and selling Lightcloud networked lighting control system products that include Zigbee devices, wherein Lightcloud is a component of a patented system, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use.

40. Defendant's acts of infringement have caused and continue to cause damage to Plaintiff. Plaintiff is entitled to recover from Defendant the damages sustained by Plaintiff as a result of Defendant's wrongful acts.

## COUNT III: DIRECT AND INDIRECT INFRINGEMENT OF THE '893 PATENT

41. Plaintiff hereby restates the allegations contained in the preceding paragraphs above as if fully set forth herein.

42. Plaintiff is the owner by assignment of the '893 Patent, "System And Method For Monitoring And Controlling Remote Devices." The '893 Patent was duly and legally issued on July 5, 2005.

43. Claim 1 of the '893 Patent states:

A system for communicating commands and sensed data between remote devices, the system comprising:

> a plurality of transceivers, each transceiver being in communication with at least one other of the plurality of transceivers, wherein each transceiver has a unique address, wherein the unique address identifies an individual transceiver, wherein each transceiver is geographically remote from the other of the plurality of transceivers, wherein each transceiver communicates with each of the other transceivers via preformatted messages;
>
> a controller, connected to one of the plurality of transceivers, the controller being in communications with each of the plurality of transceivers via a controller transceiver, the controller communicating via preformatted messages;
>
> wherein the preformatted messages comprises at least one packet, wherein the packet comprises:
>
>> a receiver address comprising a scalable address of the at least one of the intended receiving transceivers;
>>
>> sender address comprising the unique address of the sending transceiver;
>>
>> a command indicator comprising a command code;
>>
>> at least one data value comprising a scalable message; and
>>
>> an error detector comprising a redundancy check error detector; and
>
> wherein the controller sends preformatted command messages via the controller transceiver, and the plurality of transceivers send preformatted response messages.

*See* Exhibit C, Col. 14, line 50 – Col. 15, line 12.

44. Defendant has been and is now directly infringing at least claim 1 of the '893 Patent by making, having had made, using, offering for sale, and selling Lightcloud networked lighting control system products that include Zigbee devices.

45. A claim chart attached as Exhibit I, explains how Defendant directly infringed, and is infringing, claim 1 of the '893 Patent.

46. Defendant has been and now is indirectly infringing as a contributory infringer under 35 U.S.C. § 271 at least claim 1 of the '893 Patent by making, having had made, using, offering for sale, and selling Lightcloud networked lighting control system products that include Zigbee devices, wherein Lightcloud is a component of a patented system, constituting a material

part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use.

47. Defendant's acts of infringement have caused and continue to cause damage to Plaintiff. Plaintiff is entitled to recover from Defendant the damages sustained by Plaintiff as a result of Defendant's wrongful acts.

## COUNT IV: DIRECT AND INDIRECT INFRINGEMENT OF THE '073 PATENT

48. Plaintiff hereby restates the allegations contained in the preceding paragraphs above as if fully set forth herein.

49. Plaintiff is the owner by assignment of the '073 Patent, "Systems And Methods For Enabling A Mobile User To Notify An Automated Monitoring System Of An Emergency Situation." The '073 Patent was duly and legally issued on January 31, 2002.

50. Claim 1 of the '073 Patent states:

> A mobile communication device for use with an automated monitoring system for monitoring and controlling a plurality of remote devices, the automated monitoring system comprising a site controller in communication with the plurality of remote devices via a plurality of transceivers defining a wireless communication network and in communication with a host computer via a wide area network, the mobile communication device comprising:
>
> memory comprising a unique identifier associated with the mobile communication device;
>
> logic responsive to a transmit command to retrieve the unique identifier from memory and generate a transmit message using a predefined communication protocol being implemented by the wireless communication network, the transmit message comprising the unique identifier such that the transmit message may be received by the site controller via the wireless communication network and such that the site controller may identify the mobile communication device and notify the host computer of the transmit message;
>
> a wireless transmitter to communicate over the wireless communication network and to provide the transmit message to the wireless communication network;

>wherein the predefined communication protocol comprises a data packet comprising: a receiver address identifying the receiver of the data packet; a sender address identifying the sender of the data packet; and a command indicator specifying a predefined command code; and
>
>the data packet further comprising a data payload, a checksum field for performing a redundancy check, a packet length indicator which indicates a total number of bytes in the current packet; a total packet indicator which indicates the total number of packets in the current message; and a current packet indicator which identifies the current packet; and a message number identifying the current message.

*See* Exhibit D, Col. 13, lines 6-43.

51.     Defendant has been and is now directly infringing at least claim 1 of the '073 Patent by making, having had made, using, offering for sale, and selling Lightcloud networked lighting control system products that include Zigbee devices.

52.     A claim chart attached as Exhibit J, explains how Defendant directly infringed, and is infringing, claim 1 of the '073 Patent.

53.     Defendant has been and now is indirectly infringing as a contributory infringer under 35 U.S.C. § 271 at least claim 1 of the '073 Patent by making, having had made, using, offering for sale, and selling Lightcloud networked lighting control system products that include Zigbee devices, wherein Lightcloud is a component of a patented system, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use.

54.     Defendant's acts of infringement have caused and continue to cause damage to Plaintiff. Plaintiff is entitled to recover from Defendant the damages sustained by Plaintiff as a result of Defendant's wrongful acts.

## COUNT V: DIRECT AND INDIRECT INFRINGEMENT OF THE '737 PATENT

55. Plaintiff hereby restates the allegations contained in the preceding paragraphs above as if fully set forth herein.

56. Plaintiff is the owner by assignment of the '737 Patent, "Systems And Methods For Providing Remote Monitoring Of Consumption For A Utility Meter." The '737 Patent was duly and legally issued on August 9, 2001.

57. Claim 1 of the '737 Patent states:

A communication device adapted for use in an automated monitoring system for providing remote monitoring of utility consumption, the automated monitoring system comprising a site controller in communication with a plurality of utility meters via a wireless communication network and in communication with a host computer via a wide area network, the communication device comprising:

a data interface configured to receive data related to the consumption measured by a utility meter;

memory comprising a unique identifier corresponding to the utility meter;

logic configured to receive the data related to the consumption measured by the utility meter, retrieve the unique identifier corresponding to the utility meter, and generate a transmit message using a predefined communication protocol being implemented by the wireless communication network, the transmit message comprising the unique identifier and the data related to the consumption measured by the utility meter and configured such that the transmit message may be received by the site controller via the wireless communication network and such that the site controller may identify the utility meter and notify the host computer of the transmit message;

a wireless transceiver configured for communication over the wireless communication network and configured to provide the transmit message to the wireless communication network and receive messages from the wireless communication network; and

logic configured to receive a transmit message from another communication device and retransmit the received transmit message.

*See* Exhibit E, Col. 17, lines 8-40.

58. Defendant has been and is now directly infringing at least claim 1 of the '737 Patent by making, having had made, using, offering for sale, and selling Lightcloud networked lighting control system products that include Zigbee devices.

59. A claim chart attached as Exhibit K, explains how Defendant directly infringed, and is infringing, claim 1 of the '737 Patent.

60. Defendant has been and now is indirectly infringing as a contributory infringer under 35 U.S.C. § 271 at least claim 1 of the '737 Patent by making, having had made, using, offering for sale, and selling Lightcloud networked lighting control system products that include Zigbee devices, wherein Lightcloud is a component of a patented system, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use.

61. Defendant's acts of infringement have caused and continue to cause damage to Plaintiff. Plaintiff is entitled to recover from Defendant the damages sustained by Plaintiff as a result of Defendant's wrongful acts.

## COUNT VI: DIRECT AND INDIRECT INFRINGEMENT OF THE '587 PATENT

62. Plaintiff hereby restates the allegations contained in the preceding paragraphs above as if fully set forth herein.

63. Plaintiff is the owner by assignment of the '587 Patent, "Systems And Methods For Controlling Communication Between A Host Computer And Communication Devices." The '587 Patent was duly and legally issued on August 9, 2001.

64. Claim 3 of the '737 Patent states:

A site controller for use in a wireless communication network, the site controller comprising:

> a transceiver configured to receive data messages from one or more wireless transceivers of the wireless communication network, each of the one or more wireless transceivers having a unique identifier and configured to receive a sensor data signal from a remote device, the data messages comprising the sensor data signal and the unique identifier of the corresponding wireless transceiver; and
>
> a network interface device configured to provide communication between the site controller and a wide area network,
>
> wherein the site controller is configured to identify remote devices associated with the sensor data signals of the received data messages,
>
> wherein the site controller is further configured to provide information related to the sensor data signals to the wide area network for access by a network device, and
>
> and determine and store upstream and downstream communication paths for the one or more wireless transceivers of the wireless communication network.

*See* Exhibit F, Col. 19, lines 3-38.

65. Defendant has been and is now directly infringing at least claim 3 of the '587 Patent by making, having had made, using, offering for sale, and selling Lightcloud networked lighting control system products that include Zigbee devices.

66. A claim chart attached as Exhibit L, explains how Defendant directly infringed, and is infringing, claim 3 of the '587 Patent.

67. Defendant has been and now is indirectly infringing as a contributory infringer under 35 U.S.C. § 271 at least claim 3 of the '587 Patent by making, having had made, using, offering for sale, and selling Lightcloud networked lighting control system products that include Zigbee devices, wherein Lightcloud is a component of a patented system, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use.

Defendant's acts of infringement have caused and continue to cause damage to Plaintiff. Plaintiff is entitled to recover from Defendant the damages sustained by Plaintiff as a result of Defendant's wrongful acts.

### DEFENDANT'S WILLFULNESS OF INFRINGEMENT

68. Plaintiff hereby restates the allegations contained in the preceding paragraphs above as if fully set forth herein.

69. Defendant actually knew that it was infringing at least one claim of the '511, '661 and '893 patents because Defendant was provided claim charts showing such infringement. Defendant further actually knew that it was infringing at least one claim of the '073, '737 and '587 patents because it was made aware of such patents.

70. Alternatively, to the extent Defendant did not actually know that it was infringing, Defendant acted despite an objectively high likelihood that their actions constituted infringement of the patents in suit, and this objectively defined risk was either known or so obvious that it should have been known to Defendant.

71. For example, Defendant knew about the '511, '661 and '893 patents because each of them were cited in a correspondence from Plaintiff's representative to Defendant in March 2016. Defendant, in response, failed to advance any argument to distinguish the claims or support a position of non-infringement.

72. Plaintiff notes that the following Petitions for *Inter Partes* Review have been filed with the United States Patent and Trademark Office, with the following status:

   a. Case IPR2015-00663 relating to Patent 7,103,511; a Petition was filed on February 2, 2015. On June 23, 2015, the Patent Trial and Appeal Board ruled that "Petitioner does *not* demonstrate a reasonable likelihood of prevailing on its challenge to the

patentability of claims 1–4, 6–11, 27–47, and 51–64 of the '511 patent as unpatentable under 35 U.S.C. § 103." (emphasis in original). On August 29, 2015, the Patent Trial and Appeal Board denied the Petitioner's motion for reconsideration of the Board's finding that the claims were patentable.

b. Case IPR2014-00751 relating to Patent 7,468,661; a Petition was filed on May 14, 2014 to review claims 1–14. The Patent Trial and Appeal Board instituted trial with respect to claims 1–4 and 9–13 on November 17, 2014. (Paper 15) On November 13, 2015, the Patent Trial and Appeal Board ruled that "claims 2–4 … are unpatentable," but "claims 1 and 9–13 … have not been shown to be unpatentable." Case IPR2017-00001 relating to Patent 7,468,661; a Petition was filed on October 1, 2016 to institute a review of claims 1, 5, 6, 8-12, and 14. The Patent Trial and Appeal Board instituted trial with respect to claims 5, 6 and 8. On March 28, 2018, the Patent Trial and Appeal Board ruled that claims 5 and 6 are unpatentable but that Petitioner did not demonstrate that claim 8 is unpatentable.

c. Case IPR2015-01579 relating to Patent 6,914,893; a Petition was filed on July 13, 2015. On January 14, 2016, the Patent Trial and Appeal Board ruled that "the Petition and accompanying evidence does not establish that there is a reasonable likelihood Petitioner would prevail in showing the unpatentability of any one of the challenged claims, 1, 2, 10, and 37, of the '893 patent." On March 17, 2016, the Patent Trial and Appeal Board denied the Petitioner's motion for reconsideration of the Board's finding that the claims were patentable.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests the Court:

A.  Enter a judgment in favor of Plaintiff that Defendant has directly and indirectly infringed Patents 7,103,511, 7,468,661, 6,914,893, 7,263,073, 6,836,737, and 8,924,587;

B.  Enter a judgment and order requiring Defendant to pay Plaintiff its damages, costs, expenses, prejudgment and post-judgment interest, and post-judgment royalties for Defendant's infringement of Patents 7,103,511, 7,468,661, and 6,914,893, pursuant to 35 U.S.C. § 284;

C.  Enter a judgment and order holding that Defendant's infringement was willful, and award treble damages and attorney fees and expenses;

D.  Enter judgment that this is an exceptional case, and, thus, award attorney fees and expenses to Plaintiff; and

E.  Award such other and further relief as the Court deems just and proper.

## JURY TRIAL

Plaintiff demands a trial by jury on all issues so triable.

Dated: May 8, 2018

Respectfully submitted,
/s/ *James E. Cecchi*
James E. Cecchi
Caroline F. Bartlett
**CARELLA, BYRNE, CECCHI, OLSTEIN, BRODY & AGNELLO, P.C.**
5 Becker Farm Road
Roseland, NJ 07068
Telephone: (973) 994-1700
Facsimile: (973) 994-1744

Gregory J. Myers, MN #0287398
Kristen G. Marttila, MN #0346007
**LOCKRIDGE GRINDAL NAUEN P.L.L.P.**
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401

Telephone: (612) 339-6900
Facsimile: (612) 339-0981
gjmyers@locklaw.com
kgmarttila@locklaw.com

**ATTORNEYS FOR PLAINTIFF SIPCO, LLC**